## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————
)
DARIN TRIBBETT,                                )
     Plaintiff,                            )
                                   )      CIVIL ACTION NO. 1:17-cv-11140
         v.                              )
)
ENTERPRISE RENT-A-CAR                       )
COMPANY OF BOSTON, INC.                     )
     Defendant.                            )
———————————————————)

## ANSWER TO FIRST AMENDED VERIFIED COMPLAINT

Defendant, Enterprise Rent-A-Car Company of Boston, LLC ("ERAC Boston")[1]

hereby answers the Verified First Amended Complaint ("Complaint") of Plaintiff Darin

Tribbett ("Plaintiff" or "Mr. Tribbett") as follows, and to the extent that ERAC Boston does not

answer a specific averment, it is hereby denied:

## PARTIES

**COMPLAINT ¶1:** Plaintiff Darin Tribbett (referred to as "Darin") is an individual who resides in New Hampshire.

**ANSWER:** ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 1 of the Complaint and so denies it.

**COMPLAINT ¶2:** Darin is married and has two (2) children.

**ANSWER:** ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 2 of the Complaint and so denies it.

**COMPLAINT ¶3:** From September 30, 1996 through July 29, 2016, Darin was employed by Enterprise Rent-A-Car of Boston, Inc.

---

[1] Plaintiff wrongly named Enterprise Rent-A-Car of Boston, Inc.

**ANSWER:**ERAC Boston denies the allegations in paragraph 3 of the Complaint.  Responding further, ERAC Boston states that Mr. Tribbett was employed by Enterprise Rent-A-Car Company of Boston, LLC.

**COMPLAINT ¶4:**Defendant Enterprise Rent-A-Car of Boston, Inc., ("Enterprise") is a Massachusetts corporation with its principal place of business in Billerica, Massachusetts.

**ANSWER:**ERAC Boston denies the allegations in paragraph 4 of the Complaint.  Responding further, Defendant states that Enterprise Rent-A-Car of Boston, Inc. was a Massachusetts corporation.  ERAC Boston is a Delaware corporation with its principal place of business in Massachusetts.

## JURISDICTION AND VENUE

**COMPLAINT ¶5:**This Court has jurisdiction over Enterprise pursuant to M.G.L. c. 223A § 2, because Enterprise maintains its principal place of business in the Commonwealth.

**ANSWER:**Paragraph 5 of the Complaint consists of a conclusion of law to which no response is required.

**COMPLAINT ¶6:**Venue is proper pursuant to M.G.L. c. 223, §1 because Enterprise maintains its usual place of business in Middlesex County.

**ANSWER:**Paragraph 6 of the Complaint consists of a conclusion of law to which no response is required.

## FACTS

**COMPLAINT ¶7:**Darin was hired on September 30, 1996, by Enterprise as an at-will employee.

**ANSWER:**ERAC Boston admits the allegations in paragraph 7 of the Complaint.

**COMPLAINT ¶8:**On March 1, 2001 Darin and Enterprise entered into an Employment Contract ("Contract").  The Contract is attached hereto as **Exhibit A**.

**ANSWER:**ERAC Boston admits the allegations in paragraph 8 of the Complaint.

**COMPLAINT ¶9:**At the time that the Contract was signed, it was made clear to Darin that execution of the Contract was a condition of continued employment as an at-will employee.

**ANSWER:**ERAC Boston denies the allegations in paragraph 9 of the Complaint.  Responding further, Defendant states that Mr. Tribbett's execution of the Contract was a condition of his promotion to Area Manager.

**COMPLAINT ¶10:**In November, 2009, Enterprise offered Darin a position as an Area Manager in New Hampshire where until the time he was terminated, he was in charge of 17 Enterprise

branches.  His area was quite large, covering Salem, New Hampshire up the coast; as far north as Gorham, New Hampshire as well as York and Sanford, Maine.

**ANSWER:**ERAC Boston admits that Plaintiff was offered a position as an Area Manager in New Hampshire in 2009, but denies the remaining allegations in paragraph 10.  Responding further, ERAC Boston states that Plaintiff was first promoted to Area Manager in 2001, when he signed the Employment Contract, and was responsible for a number of branches in New Hampshire and Maine as Area Manager in New Hampshire.

**COMPLAINT ¶11:**Darin was not given the opportunity to have legal counsel review the Contract or to negotiate its terms.

**ANSWER:**ERAC Boston denies the allegations in paragraph 11 of the Complaint.

**COMPLAINT ¶12:**The Contract contains a non-compete clause whereby Darin is prohibited from working for a company in the rental car business within 100-mile radius of the Enterprise office or offices over which he had direct or indirect supervision for a period of two years. Specifically, Paragraph 13 provides as follows:

> Upon termination or resignation of employment for any reason, during the period of two years from and after the date of termination or resignation, Employee will not directly or indirectly within 100 mile radius of any office of the Employer in which Employee has been employed or had supervised during the two years preceding the date of such termination or resignation, enter into or engage in the previously specified businesses of Employer in like or similar duties, capacities, responsibilities or activities (which includes activities directly or indirectly supervised or about which Employee had proprietary information) which he/she performed for Employer, the corporate parent or any of corporate parent's subsidiaries, as a sole proprietor, joint venture, partner, employee, advisor, consultant, officer, director, shareholders, investor or otherwise of or to any company, person or entity.  The provision of this paragraph shall not prevent Employee from owning, solely as a passive investor, up to three percent (3%) of the issued and outstanding publicly traded class of stock of any corporation who securities are traded on any national securities exchange or are actively traded in the over-the-counter market, prices for which regularly are quoted in a daily publication of general circulation,  Employee further agrees the provisions of this paragraph 13 are reasonable in all respects, necessary to protect the Employer's legitimate business interests and will not in any way prevent Employee from earning a living.

**ANSWER:**ERAC Boston admits that the Employment Contract contains the quoted provision and further responds that the document speaks for itself.

**COMPLAINT ¶13:**Darin is not in possession of any of Enterprise's trade secrets or other propriety information that would enable him to gain an unfair advantage in competition.

**ANSWER:**ERAC Boston denies the allegations in paragraph 13 of the Complaint.

**COMPLAINT ¶14:**Darin's job consisted managing employees and renting cars, plain and simple.

**ANSWER:**ERAC Boston denies the allegations in paragraph 14 of the Complaint.

**COMPLAINT ¶15:**All of the information that Darin possesses regarding Enterprise is available to the public.

**ANSWER:**ERAC Boston denies the allegations in paragraph 15 of the Complaint.

**COMPLAINT ¶16:**Paragraph 19 of the Employment Contract provides that "[i]t is agreed that this contract will be interpreted according to the laws of Missouri without reference to principles of conflict of laws."

**ANSWER:**ERAC Boston admits that the Employment Contract contains the quoted provision and further responds that the document speaks for itself.

**COMPLAINT ¶17:**In Missouri, a non-compete agreement requires the support of adequate consideration, which is something of value that moves from the employer to the employee. Anytime a non compete is signed by an employee, the employer must provide some additional benefit.

**ANSWER:**Paragraph 17 consists of conclusions of law to which no response is required.  To the extent the Court requires a response, ERAC Boston denies the allegations.

**COMPLAINT ¶18:**Under Missouri law, an offer by an employer of at-will employment, or the continuation of at-will employment is not a source of adequate consideration.

**ANSWER:**Paragraph 18 consists of conclusions of law to which no response is required.  To the extent the Court requires a response, ERAC Boston denies the allegations.

**COMPLAINT ¶19:**The Contract is unenforceable due to lack of consideration.

**ANSWER:**Paragraph 19 consists of a conclusion of law to which no response is required.  To the extent the Court requires a response, ERAC Boston denies the allegation.  Responding further, on June 15, 2017, the Massachusetts Superior Court denied Mr. Tribbett's emergency motion for a preliminary injunction, concluding that Mr. Tribbett failed his burden to show likelihood of success on the merits.

**COMPLAINT ¶20:**The Contract is also overbroad and overreaching as a non compete provision must be reasonably limited in duration and geographically.

**ANSWER:**Paragraph 20 consists of conclusions of law to which no response is required.  To the extent the Court requires a response, ERAC Boston denies the allegations.

**COMPLAINT ¶21:**A two-year non-compete and a 100 mile radius from the offices that Darin managed makes it impossible for Darin to work in most of New England.

**ANSWER:**ERAC Boston denies the allegations in paragraph 21 of the Complaint.

**COMPLAINT ¶22:**The Contract effectively forced Darin to refrain from working in the rental car industry.

**ANSWER:**ERAC Boston admits that the Contract requires Plaintiff to refrain from working in the rental car industry within the restricted geographic region and for a defined period and otherwise denies the allegations in paragraph 22.

**COMPLAINT ¶23:**There is no other industry in which Darin can gain comparable employment.

**ANSWER:**ERAC Boston denies the allegations in paragraph 23 of the Complaint.

**COMPLAINT ¶24:**On information and belief, Enterprise acknowledges the unenforceability of the non-compete provision of the Employment Contract and has requested employees to sign new employment contracts.

**ANSWER:**ERAC Boston admits that it has updated its standard employment contracts from time to time and has required employees to sign the updated version, but denies the remaining allegation in paragraph 24 of the Complaint.

**COMPLAINT ¶25:**On July 29, 2016, Enterprise terminated Darin's employment.  Enterprise asked Darin to sign a new non-compete with pressure and time limits despite Darin's wife informing them that he was hospitalized.

**ANSWER:**ERAC Boston admits that it terminated Mr. Tribbett's employment on July 29, 2016, that ERAC Boston offered him a severance agreement in conjunction with his termination that included restrictive covenants, and denies the remaining allegations in paragraph 25 of the Complaint.

**COMPLAINT ¶26:**After being terminated by Enterprise, Darin commenced negotiations with Key Automotive Group for employment.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 26 of the Complaint and so denies it.

**COMPLAINT ¶27:**In October, 2016, Key Auto Group hired Darin.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 27 of the Complaint and so denies it.

**COMPLAINT ¶28:**Darin never solicited or contacted any Enterprise customer or employee.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 28 of the Complaint and so denies it.

**COMPLAINT ¶29:**On December 22, 2016, Laura Staley, Employment Counsel for Enterprise, sent a letter to Darin and to Key Automotive Group (attached hereto as **Exhibit B**) outlining the provisions of the non-competition clause in the Employment Contract and threatening litigation against Key Automotive Group should it continue to employ Darin.

**ANSWER:**ERAC Boston admits that on its behalf, counsel for Enterprise Holdings, Inc., sent correspondences to Plaintiff and Key Automotive Group and further responds that the correspondences speak for themselves.

**COMPLAINT ¶30:**As a result, Key Automotive Group terminated Darin's employment on January 6, 2017.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 30 of the Complaint and so denies it.

**COMPLAINT ¶31:**Efforts to resolve this dispute outside of court were unsuccessful.

**ANSWER:**ERAC Boston admits the allegations in paragraph 31, insofar as the parties have not reached a resolution of any legal dispute between them.

**COMPLAINT ¶32:**The decision to terminate Darin was made for unlawful reasons. Attached hereto as **Exhibit C** is a copy of the initial charge and supplemental charge filed on Darin's behalf.

**ANSWER:**ERAC Boston denies that the decision to terminate Plaintiff's employment was made for unlawful reasons.  ERAC Boston further responds that any documents submitted to agencies on Plaintiff's behalf speak for themselves.  Responding further, ERAC Boston generally denies the allegations asserted in Plaintiff's administrative filings.

**COMPLAINT ¶33:**The decision to enforce the non-compete was made in retaliation for Darin having complained of discrimination.

**ANSWER:**ERAC Boston denies the allegations in paragraph 33 of the Complaint.

**COMPLAINT ¶34:**On May 23, 2017 the Massachusetts Commission Against Discrimination dismissed Darin's complaint without prejudice so that Tribbett could pursue his claims in court.

**ANSWER:**ERAC Boston admits that on May 23, 2017, the Massachusetts Commission Against Discrimination dismissed Mr. Tribbett's charge pursuant to his request.

**COMPLAINT ¶35:**On June 8, 2017, the Equal Employment Opportunity Commission issued a notice of right to sue.

**ANSWER:**ERAC Boston admits the allegations in paragraph 35 of the Complaint.

**COMPLAINT ¶36:**Darin satisfied his administrative burdens and his claims of discrimination and retaliation are ripe for consideration.

**ANSWER:**Paragraph 36 of the Complaint consists of a conclusion of law to which no response is required.

**Overview of Discrimination and Retaliation**

**COMPLAINT ¶37:**Darin is a 45 year old male who also suffers from a disability that is protected under Massachusetts law as well as the Americans With Disabilities Act.

**ANSWER:**ERAC Boston admits that Mr. Tribbett is a 45 year old male.  The remaining allegations in paragraph 37 state conclusions of law to which no response is required.  To the extent that a response to such remaining allegations is deemed required, ERAC Boston denies those allegations.

**COMPLAINT ¶38:**Darin was an extremely capable management level employee who worked for Enterprise.

**ANSWER:**ERAC Boston admits that Mr. Tribbett worked for ERAC Boston as a management level employee and denies the remaining allegations in paragraph 38.

**COMPLAINT ¶39:**But for his age Darin would not have been fired.

**ANSWER:**ERAC Boston denies the allegations in paragraph 39 of the Complaint.

**COMPLAINT ¶40:**But for his disability Darin would not have been fired.

**ANSWER:**ERAC Boston denies the allegations in paragraph 40 of the Complaint.

**COMPLAINT ¶41:**Darin complained of age and disability discrimination.

**ANSWER:**ERAC Boston admits that Mr. Tribbett, through his attorney, made allegations of age and disability discrimination after the termination of Mr. Tribbett's employment.

**COMPLAINT ¶42:**After complaining of discrimination Darin obtained subsequent employment.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the timing of any subsequent employment, and therefore denies the allegations in paragraph 42.

**COMPLAINT ¶43:**Enterprise threatened to enforce a non-compete agreement through legal means.

**ANSWER:**ERAC Boston admits that, through an attorney, it communicated to Mr. Tribbett its intention to enforce his non-compete agreement.

**COMPLAINT ¶44:**As a result of this threat Darin's new employer terminated his employment.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 44 of the Complaint and so denies it.

**COMPLAINT ¶45:**But for his complaints of age and disability discrimination Enterprise would not have enforced the non-compete agreement.

**ANSWER:**ERAC Boston denies the allegation in paragraph 45 of the Complaint.

**Facts Supporting Discrimination**

**COMPLAINT ¶46:**Darin was hired by Enterprise in 1996.

**ANSWER:**ERAC Boston admits the allegation in paragraph 46 of the Complaint.

**COMPLAINT ¶47:**In 2001 Darin was promoted to Area Manager.

**ANSWER:**ERAC Boston admits the allegation in paragraph 47 of the Complaint.

**COMPLAINT ¶48:**Enterprise evaluates performance based upon the four (4) core areas of the business: growth; profitability; employee retention; and ESQI (the customer service score).

**ANSWER:**ERAC Boston admits that it evaluates performance of its employees based on these and other criteria.

**COMPLAINT ¶49:**Darin's performance was excellent throughout the time that he worked for Enterprise.

**ANSWER:**ERAC Boston denies the allegation in paragraph 49 of the Complaint.

**COMPLAINT ¶50:**In 2014 Brian Duffy was selected as the General Manager of the Boston Group that covered Massachusetts, New Hampshire, and Maine.

**ANSWER:**ERAC Boston admits the allegation in paragraph 50 of the Complaint.

**COMPLAINT ¶51:**Shortly thereafter, Andrew Dolloph was selected as the Regional Vice President for the area.  Dolloph is approximately ten (10) years younger than Darin.

**ANSWER:**ERAC Boston admits that Mr. Dolloph became Regional Vice President in 2014 and denies the remaining allegation in paragraph 51 of the Complaint.

**COMPLAINT ¶52:**Duffy and Dolloph had worked together for Enterprise in Virginia.

**ANSWER:**ERAC Boston admits the allegation in paragraph 52 of the Complaint.

**COMPLAINT ¶53:**Darin was rated a top performer for Enterprise on a company wide basis in the summer of 2015 and received a glowing performance review in October 2015.

**ANSWER:**ERAC Boston responds that the documents containing the company's evaluation of Mr. Tribbett's job performance speak for themselves and otherwise denies the allegations in Paragraph 53 of the Complaint.

**COMPLAINT ¶54:**Despite his experience and exceptional performance, Darin was passed over for opportunities to interview for promotions most recently in the summer of 2015.

**ANSWER:**ERAC Boston denies the allegations in paragraph 54 of the Complaint.  Responding further, ERAC Boston states that Mr. Tribbett applied for promotions to positions during the

spring and summer of 2015, interviewed for positions, and that Mr. Tribbett's supervisor, Mr. Dolloph, supported Complainant's applications.

**COMPLAINT ¶55:** Darin was one of the oldest Area Managers at Enterprise.

**ANSWER:** ERAC Boston admits that Mr. Tribbett was older than some of the other Area Managers in his region and otherwise denies the allegations Paragraph 55 of the Complaint.

**COMPLAINT ¶56:** In or about the summer of 2015 Sherri Wheeler was brought in as the Business Manager for the region. Ms. Wheeler had worked for Enterprise in Virginia.

**ANSWER:** ERAC Boston admits that Ms. Wheeler became a Business Manager in the region that included Mr. Tribbett's assigned area in the summer of 2015 and otherwise denies the allegations in paragraph 56 of the Complaint.

**COMPLAINT ¶57:** Upon information and belief, Wheeler is younger than Darin.

**ANSWER:** ERAC Boston denies the allegation in paragraph 57 of the Complaint.

**COMPLAINT ¶58:** Darin had worked with Business Managers throughout the time that he was employed by Enterprise. Wheeler worked with Darin and five (5) other Area Managers. Wheeler was the only Business Manager that called and emailed Darin on a regular basis demanding that he perform tasks that other Business Managers had not requested of him. It became clear that Wheeler did not like Darin and was doing this to spite him. Darin was treated in a disparate manner.

**ANSWER:** ERAC Boston admits that Mr. Tribbett worked with other Business Managers during his tenure and that Ms. Wheeler worked with other Area Managers, and denies the remaining allegations in paragraph 58 of the Complaint.

**COMPLAINT ¶59:** The Area Managers who reported to Dolloph and Duffy were George, Krista, Nick, Ryan, Jason, and Jeff. They averaged to be approximately ten (10) years younger than Darin.

**ANSWER:** ERAC Boston admits that the listed Area Managers reported to Mr. Dolloph and Mr. Duffy, but denies that their average age was ten years younger than Mr. Tribbett. Responding further, ERAC Boston states that other Area Managers reported to Mr. Dolloph during the relevant period.

**COMPLAINT ¶60:** In late 2015 or very early 2016 an employee was written up because of failing to meet regional sales requirements. Darin wrote the employee up at the direction of Dolloph.

**ANSWER:** ERAC Boston states that the allegations in paragraph 60 of the Compliant are too vague to be susceptible to admission or denial, and therefore denies them.

**COMPLAINT ¶61:** In January 2016 the employee quit and provided poor feedback during her exit interview.

**ANSWER:**ERAC Boston states that the allegations in paragraph 61 are too vague to be susceptible to admission or denial, and therefore denies them.

**COMPLAINT ¶62:**Nobody from Enterprise asked for Darin's opinion or input regarding the feedback offered by the former employee.

**ANSWER:**ERAC Boston states that the allegations in paragraph 62 are too vague to be susceptible to admission or denial, and therefore denies them.

**COMPLAINT ¶63:**During Darin's nearly 20 years with Enterprise this was the first time that an employee gave negative feedback regarding Darin.

**ANSWER:**ERAC Boston denies the allegation in paragraph 63 of the Complaint.

**COMPLAINT ¶64:**The other younger Area Managers have received negative feedback from employees at exit interviews.

**ANSWER:**ERAC Boston admits that Area Managers that were younger than Mr. Tribbett received negative feedback from employees at exit interviews.

**COMPLAINT ¶65:**Wheeler, Dolloph, and Duffy used this feedback as an opportunity to target Darin.

**ANSWER:**ERAC Boston denies the allegation in paragraph 65 of the Complaint.

**COMPLAINT ¶66:**Upon information and belief, Dolloph and Duffy did not do that with the other Area Managers.

**ANSWER:**ERAC Boston states that Dolloph and Duffy did not target any Area Managers and otherwise denies the allegations in paragraph 66 of the Complaint.

**COMPLAINT ¶67:**Immediately after receive [sic] of the negative feedback they arranged for an audit of the 17 branches that Darin manages.

**ANSWER:**ERAC Boston denies the allegation in paragraph 67 of the Complaint.

**COMPLAINT ¶68:**Duffy and Dolloph did not audit the other Area Managers.

**ANSWER:**ERAC Boston denies the allegation in paragraph 68 of the Complaint.

**COMPLAINT ¶69:**On one occasion the entire business department arrived unannounced and scoured over every detail of Darin's branches and interviewed his employees.

**ANSWER:**ERAC Boston admits that it conducted audits of Mr. Tribbett's branches. Responding further, ERAC Boston states it audits a portion of its branches each fiscal year and that the schedule is determined at the beginning of the fiscal year.

**COMPLAINT ¶70:**The audits did not demonstrate any problems with Darin's business or financial practices. In addition, the employee feedback was positive.

**ANSWER:**ERAC Boston states that the allegations in paragraph 70 of the Complaint are too vague to be susceptible to admission or denial, and therefore denies them.  Responding further, ERAC Boston states that most audits reveal at least one issue with business or financial practices.

**COMPLAINT ¶71:**Despite these findings, Enterprise looked to find fault with Darin and chose to criticize him for minor issues that were easily correctable.

**ANSWER:**ERAC Boston denies the allegation in paragraph 71 of the Complaint.

**COMPLAINT ¶72:**Enterprise used the audit as a tool to find fault with Darin and not as an objective fact finding tool. This was pretext.

**ANSWER:**ERAC Boston denies the allegation in paragraph 72 of the Complaint.

**COMPLAINT ¶73:**This was the first time in 20 years with Enterprise that Darin's area was audited.

**ANSWER:**ERAC Boston denies the allegation in paragraph 73 of the Complaint. Responding further, ERAC Boston states it audits a portion of its branches each fiscal year and that the schedule is determined at the beginning of the fiscal year.

**COMPLAINT ¶74:**Upon information and belief, the other younger Area Managers working with Duffy and Dolloph were not audited.

**ANSWER:**ERAC Boston denies the allegation in paragraph 74 of the Complaint.

**COMPLAINT ¶75:**Darin is the oldest Area Managers in his region and group and among the oldest company wide.

**ANSWER:**ERAC Boston admits that Mr. Tribbett was the oldest Area Manager in his region and one of the oldest employed by ERAC Boston and otherwise denies the allegations in Paragraph 75 of the Complaint.

**COMPLAINT ¶76:**Enterprise has a reputation of favoring Area Managers under the age of 40.

**ANSWER:**ERAC Boston denies the allegation in paragraph 76 of the Complaint.

**COMPLAINT ¶77:**During a meeting that took place in the spring of 2015, Enterprise stated that it recognized that it was under-represented with people over the age of 40 in the rental division.

**ANSWER:**ERAC Boston denies the allegation in paragraph 77 of the Complaint.

**COMPLAINT ¶78:**Enterprise did not provide Darin with a copy of the findings from the audit.

**ANSWER:**ERAC Boston states that paragraph 78 of the Complaint is too vague to be susceptible to admission or denial, and therefore denies those allegations.  Responding further, ERAC Boston states that some audits resulted in verbal feedback only.

**COMPLAINT ¶79:**On or about February 1, 2016, the day after the audit was completed, Darin was placed on a 90-day probation.

**ANSWER:**ERAC Boston admits that Mr. Tribbett received a three-month performance improvement plan dated February 5, 2016 and denies the remaining allegations in paragraph 79 of the Complaint.

**COMPLAINT ¶80:**The terms of the 90-day probation provided that Darin be measured based upon the four (4) core areas of the business: growth; profitability; employee retention; and ESQI (the customer service score). In addition, Darin was also measured regarding additional criteria including, but not limited to, sales numbers. This had never been an expectation for Darin or the other Area Managers in his region.

**ANSWER:**ERAC Boston denies the allegation that sales numbers had never been an expectation for Mr. Tribbett or other Area Managers and further responds that the performance plan speaks for itself.

**COMPLAINT ¶81:**This was the first time that Darin had negative feedback or criticism during his career with Enterprise.

**ANSWER:**ERAC Boston denies the allegation in paragraph 81 of the Complaint.

**COMPLAINT ¶82:**Darin was treated in a disparate manner compared to the other Area Managers employed by Enterprise and also as compared with the other Area Managers who worked with Duffy and Dolloph.

**ANSWER:**ERAC Boston denies the allegation in paragraph 82 of the Complaint.

**COMPLAINT ¶83:**Enterprise did not provide Darin with copies of disciplinary papers that were placed in his personnel file in violation of the law.

**ANSWER:**ERAC Boston denies the allegation in paragraph 83 of the Complaint.

**COMPLAINT ¶84:**In December 2015 Darin became ill with Hepatitis and liver failure.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 84 of the Complaint and so denies it.

**COMPLAINT ¶85:**Darin began to experience symptoms in December 2015 and the condition was diagnosed in February 2016.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 85 of the Complaint and so denies it.

**COMPLAINT ¶86:**Enterprise was aware of Darin's illness.

**ANSWER:**ERAC Boston admits that in March 2016, Mr. Tribbett told Mr. Dolloph and HR Generalist Miah Marquis that he had a medical condition that would require short medical

appointments but no other time away from work.  ERAC Boston otherwise denies the allegations in paragraph 86 of the Complaint.

**COMPLAINT ¶87:**Darin's medical condition has a tremendous impact on him from a physical and mental perspective.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 87 of the Complaint and so denies it.

**COMPLAINT ¶88:**Darin was diagnosed with liver failure with elevated liver function tests and bilirubin that was causing the yellowing of his skin and eyes.  Darin was discharged with a plan to see a GI specialist immediately.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 88 of the Complaint and so denies it.

**COMPLAINT ¶89:**Darin made Dolloph and Miah Marquis, his Human Resources representative, aware of the medical diagnosis.

**ANSWER:**ERAC Boston admits that in March 2016, Mr. Tribbett told Mr. Dolloph and HR Generalist Miah Marquis that he had a liver condition that would require short medical appointments but no other time away from work.

**COMPLAINT ¶90:**This was approximately 30 days into the first 90-day probation.

**ANSWER:**ERAC Boston admits that Mr. Tribbett first made a disclosure about a medical condition to ERAC Boston approximately 30 days into his first performance improvement plan in 2016 and otherwise denies the allegations in paragraph 90.

**COMPLAINT ¶91:**Darin's colleagues at Enterprise were completely unsupportive regarding his serious medical condition.

**ANSWER:**ERAC Boston denies the allegations in paragraph 91 of the Complaint.

**COMPLAINT ¶92:**With the exception of weekly visits to his GI specialist and lab work, Darin did not take off time due to his illness.

**ANSWER:**ERAC Boston admits that Mr. Tribbett did not formally take time off due to his medical condition with the exception of weekly medical appointments and otherwise denies the allegations in paragraph 92 of the Complaint.

**COMPLAINT ¶93:**Darin did not take off additional time because he was fearful of losing his job.

**ANSWER:**ERAC Boston states that it lacks sufficient information to form a belief as to allegations about Mr. Tribbett's mental state and on that basis denies the allegations in paragraph 93 of the Complaint.

**COMPLAINT ¶94:**The terms of the probation included that he could be fired at any time during the 90 days if improvements were not being made. Nobody else at Enterprise could do Darin's job if he was out of work. As a result, he had not choice and had to work even though he was sick.

**ANSWER:**ERAC Boston responds that the performance improvement plan to which Mr. Tribbett was subject speaks for itself and denies that no other employees at ERAC Boston could do Mr. Tribbett's job if he were out of work for a medical leave.

**COMPLAINT ¶95:**As a result, Darin worked hard while experiencing significant symptoms of his illness, as it was his only hope of keeping his job.

**ANSWER:**ERAC Boston denies the allegations in paragraph 95 of the Complaint.

**COMPLAINT ¶96:**As part of the probation Dolloph made it a requirement to meet or have a phone call with him every Friday at 5:00 pm to review the work that was done during the week.

**ANSWER:**ERAC Boston responds that the performance improvement plan to which Mr. Tribbett was subject speaks for itself and otherwise denies the allegations in paragraph 96 of the Complaint.

**COMPLAINT ¶97:**The probation ended in late April 2016. At that time Darin was told that they were not satisfied with his work.

**ANSWER:**ERAC Boston admits that Mr. Tribbett's first performance improvement plan in 2016 concluded in or about late April 2016 and that ERAC Boston communicated to Mr. Tribbett that he had failed to meet the terms of that performance improvement plan.  ERAC Boston otherwise denies the allegations in paragraph 97 of the Complaint.

**COMPLAINT ¶98:**Darin performed satisfactorily and even improved on the four (4) core goals and had good sales numbers.

**ANSWER:**ERAC Boston admits that Mr. Tribbett's performance on the four core areas improved to some extent and denies the remaining allegations in paragraph 98 of the Complaint. Responding further, ERAC Boston states that Mr. Tribbett failed to meet the requirements of his first performance improvement plan in 2016 and that Mr. Tribbett's area fell short of regional averages in key metrics.

**COMPLAINT ¶99:**Enterprise did not care about Darin's performance. Instead, Enterprise wanted to get rid of him.

**ANSWER:**ERAC Boston denies the allegations in paragraph 99 of the Complaint.

**COMPLAINT ¶100:**Dolloph told Darin that if were to quit that Dolloph would try to get him 35% to 40% of his annual salary as severance.  Dolloph also said that he did not feel that Darin would be part of the team moving forward.  Dolloph then said that there would be a second 90-day probation and that he was sure that Darin would not meet the requirements. If Darin chose to stay, he would not get such a large severance.

**ANSWER:**ERAC Boston states that Mr. Dolloph discussed Mr. Tribbett's employment status with him at the conclusion of his first performance improvement plan of 2016, including the possibility of a potential resignation with severance, and otherwise denies the allegations in paragraph 100 of the Complaint.

**COMPLAINT ¶101:**Darin should have been taken off of a performance plan because his work compared favorably to his fellow Area Managers.

**ANSWER:**ERAC Boston denies the allegations in paragraph 101 of the Complaint.

**COMPLAINT ¶102:** Darin did not agree to quit his job because he could not afford to stop working.

**ANSWER:**ERAC Boston admits that Mr. Tribbett did not resign his employment and states that it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 102 of the Complaint and so denies them.

**COMPLAINT ¶103:**Darin believed that he could work at a level equal to or better than the other Area Managers. As a result, Darin was confident that an objective review of his work would demonstrate that he was an asset.

**ANSWER:**ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 103 of the Complaint and so denies it.

**COMPLAINT ¶104:**OMITTED

**COMPLAINT ¶105:**Dolloph showed no interest in Darin's work and did not have weekly meetings with him.

**ANSWER:**ERAC Boston admits that Mr. Dolloph did not have regularly-scheduled weekly meetings with Mr. Tribbett and denies the remaining allegation in paragraph 105 of the Complaint.

**COMPLAINT ¶106:**The lack of interest in Darin made it clear that, no matter what he did, he was going to be fired at the end of the 90 day period.

**ANSWER:**ERAC Boston denies the allegations in paragraph 106 of the Complaint.

**COMPLAINT ¶107:**During the 90 day period Darin did extremely well with his numbers scoring significantly above group, region, and corporate average for that time frame and for the fiscal year.  Darin set a record in July in operating profit of over $300 per car, this translated into greater than $450,000 in profit in his area for one month.

**ANSWER:**ERAC Boston admits that Mr. Tribbett's area scored above regional average on one metric during the ninety-day performance improvement plan period and that his area obtained operating profit of approximately $300 per car in July, and denies the remaining allegations in paragraph 107 of the Complaint.

**COMPLAINT ¶108:**During the entire time that Darin was on probation he was directed to attend evening meetings that often included drinking alcohol.

**ANSWER:**ERAC Boston admits that Mr. Tribbett was expected to meet at least once a week for lunch or breakfast with an area employee and further responds that the performance improvement plan speaks for itself.  Responding further, ERAC Boston admits that Area Managers sometimes attend evening events that may serve alcohol, but denies ERAC Boston required, encouraged or expected Mr. Tribbett to consume any alcohol.

**COMPLAINT ¶109:**Attendance at evening meetings was especially problematic for Darin because he could not drink alcohol due to health issues and was recovering from his medical condition and Enterprise knew that it was asking too much of him. Despite being exhausted, Darin attended these events.

**ANSWER:**ERAC Boston denies the allegations in paragraph 109 of the Complaint.

**COMPLAINT ¶110:**Darin did not take a vacation or sick day during the time that he was on probation and worked seven (7) days per week.

**ANSWER:**ERAC Boston admits that Mr. Tribbett did not take any full vacation or sick days and denies the remaining allegations in paragraph 110 of the Complaint.

**COMPLAINT ¶111:**Darin was fired on July 29, 2016.

**ANSWER:**ERAC Boston admits the allegation in paragraph 111 of the Complaint.

**COMPLAINT ¶112:**During the second 90 day period Darin's numbers exceeded expectations in growth, profit, and customer service scores.

**ANSWER:**ERAC Boston admits that through the end of July 2016, Plaintiff's area's performance exceeded regional the average in growth and equaled regional average in customer service scores and denies the remaining allegations in paragraph 112 of the Complaint. Responding further, ERAC Boston states that Plaintiff failed to meet or exceed regional averages in profit (as measured by additional revenue and net other) and employee retention.

**COMPLAINT ¶113:**Enterprise chose to fire Darin prior to the end of the month so that it would not have to address figures after the company ran its numbers.

**ANSWER:**ERAC Boston denies the allegations in paragraph 113 of the Complaint.

**COMPLAINT ¶114:** Enterprise knew that Darin would hit the numbers once they ran them.

**ANSWER:**ERAC Boston denies the allegations in paragraph 114 of the Complaint.

**COMPLAINT ¶115:** Darin was told that he lacked leadership and failed to meet the objectives for additional revenue.

**ANSWER:** ERAC Boston admits the allegations in paragraph 115 of the Complaint.

**COMPLAINT ¶116:** These reasons can be proven to be false and pretext for the real reason which was age and disability discrimination.

**ANSWER:** ERAC Boston denies the allegations in paragraph 116 of the Complaint.

**COMPLAINT ¶117:** During the twenty (20) years that Darin worked for Enterprise no concern was ever raised about his leadership skills.

**ANSWER:** ERAC Boston denies the allegations in paragraph 117 of the Complaint.

**COMPLAINT ¶118:** The second reason was also false because Darin met all of the financial objectives.

**ANSWER:** ERAC Boston states that the allegations in paragraph 118 of the Complaint are too vague to be susceptible to admission or denial and therefore denies the allegations in paragraph 118 of the Complaint.

**COMPLAINT ¶119:** The other younger Area Managers did not have the same expectations and Darin had superior leadership skills.

**ANSWER:** ERAC Boston denies the allegations in paragraph 119 of the Complaint.

**COMPLAINT ¶120:** Many Area Managers at Enterprise engaged in fraudulent fuel sales in order to artificially inflate their numbers. They used a variety of techniques that violated company rules.

**ANSWER:** ERAC Boston denies the allegations in paragraph 120 of the Complaint.

**COMPLAINT ¶121:** Darin refused to use fraudulent numbers or fraudulent techniques.

**ANSWER:** ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 121 of the Complaint and so denies it.

**COMPLAINT ¶122:** Enterprise knew or should have known that at least two (2) of the Area Managers reporting to Dolloph engaged fraudulent fuel sales.

**ANSWER:** ERAC Boston denies the allegations in paragraph 122 of the Complaint.

**COMPLAINT ¶123:** Enterprise did not audit the people engaged in fraudulent fuel sales despite the fact that the numbers reported would make it obvious that frauds were being committed.

**ANSWER:** ERAC Boston denies the allegations in paragraph 123 of the Complaint.

**COMPLAINT ¶124:** Darin's numbers for the second quarter exceeded expectation without factoring in the fraudulent fuel sales.

**ANSWER:** ERAC Boston denies the allegations in paragraph 124 of the Complaint.

**COMPLAINT ¶125:** When Darin was fired he asked if he could remain on the health insurance plan for a few weeks while determining his next step. Dolloph rejected Darin's request and Darin's family health insurance would be terminated that same day.

**ANSWER:** ERAC Boston admits that Mr. Tribbett's health insurance was terminated on the last day of employment in accordance with ERAC Boston's health insurance plan and otherwise denies the allegations in paragraph 125 of the Complaint.

**COMPLAINT ¶126:** Through counsel Darin complained of discrimination on August 26, 2016.

**ANSWER:** ERAC Boston admits that Mr. Tribbett's counsel tendered a correspondence on his behalf to ERAC Boston on or about August 26, 2016 and states that the document speaks for itself.

**COMPLAINT ¶127:** Thereafter, Enterprise elected to attempt to enforce a non-compete agreement that Enterprise knew was unenforceable. This was done to prevent Darin from gaining meaningful employment. This caused extreme harm to Darin and also prevented him from mitigating damages.

**ANSWER:** ERAC Boston denies the allegations in paragraph 127 of the Complaint.

### Age Discrimination

**COMPLAINT ¶128:** The other six Area Managers that reported to Dolloph were on average ten (10) years younger than Darin.

**ANSWER:** ERAC Boston denies the allegations in paragraph 128 of the Complaint.

**COMPLAINT ¶129:** Darin was treated in a disparate manner as compared to them.

**ANSWER:** ERAC Boston denies the allegations in paragraph 129 of the Complaint.

**COMPLAINT ¶130:** But for Darin's age he would not have been placed on a performance plan.

**ANSWER:** ERAC Boston denies the allegations in paragraph 130 of the Complaint.

**COMPLAINT ¶131:** But for Darin's age he would not have been denied promotions.

**ANSWER:** ERAC Boston denies the allegations in paragraph 131 of the Complaint.

**COMPLAINT ¶132:** But for Darin's age he would not have been fired.

**ANSWER:** ERAC Boston denies the allegations in paragraph 132 of the Complaint.

**COMPLAINT ¶133:**Within a very short time after Darin was fired a promotion opened up in Darin's region. This position previously existed in the region and Darin has expressed interest in it. The position was vacant until immediately after Darin was fired. Darin was also the most qualified person in the company to fill the position.

**ANSWER:**ERAC Boston admits that a position became available after Mr. Tribbett's termination that would have been a promotion for Mr. Tribbett, but ERAC Boston denies that Mr. Tribbett was the most qualified person for the position and denies the remaining allegations in paragraph 133 of the Complaint.

**COMPLAINT ¶134:**The Area Manager chosen for the position is one of the people engaged in the fraudulent fuel sales and is ten (10) years younger than Darin.

**ANSWER:**ERAC Boston denies the allegations in paragraph 134 of the Complaint.

**COMPLAINT ¶135:**Dolloph knew that this person was engaged in fraudulent fuel sales but placed her in the position anyway.

**ANSWER:**ERAC Boston denies the allegations in paragraph 135 of the Complaint.

**COMPLAINT ¶136:**Other Area Managers receive complaints from people on exit interviews but did not receive audits.

**ANSWER:**ERAC Boston admits that other Area Managers receive complaints from departing employees during exit interviews but denies the remaining allegations in paragraph 136 of the Complaint.

**COMPLAINT ¶137:**Upon information and belief, Enterprise does not promote people over the age of 40 into Regional Rental Manager/City Manager positions. The positions that Darin sought but was refused over the last few years of his employment.

**ANSWER:**ERAC Boston denies the allegations in paragraph 137 of the Complaint.

**COMPLAINT ¶138:** Dolloph replaced Darin with someone at least 15 years younger than Darin.

**ANSWER:**ERAC Boston admits the allegations in paragraph 138 of the Complaint.

### Disability Discrimination

**COMPLAINT ¶139:**When Enterprise learned that Darin suffered a significant disability it continued to place enormous pressure on Darin to work seven (7) days per week with no vacation or days off out of fear that he would be fired.

**ANSWER:**ERAC Boston denies the allegations in paragraph 139 of the Complaint.

**COMPLAINT ¶140:**Enterprise exerted even greater pressure on Darin by demanding that he frequently attend evening events.

**ANSWER:**ERAC Boston denies the allegations in paragraph 140 of the Complaint.

**COMPLAINT ¶141:**There were never any questions about how Darin was feeling or an offer to help.

**ANSWER:**ERAC Boston denies the allegations in paragraph 141 of the Complaint.

**COMPLAINT ¶142:**When Darin placed someone on probation Darin would offer to help and to provide guidance to help an employee reach goals.

**ANSWER:**ERAC Boston lacks information sufficient to form a belief regarding the truth of the allegations in paragraph 142 of the Complaint with respect to each and every instance of probation within Mr. Tribbett's area.  ERAC Boston admits that Mr. Tribbett would typically provide guidance to an employee on probation.

**COMPLAINT ¶143:**Enterprise failed to offer similar support or guidance to Darin.

**ANSWER:**ERAC Boston denies the allegations in paragraph 143 of the Complaint.

**COMPLAINT ¶144:** Despite a failing liver, part of Darin's probationary expectations was to increase the number of social outings with his employees. Without exception, these included alcohol which Darin could not consume with a failing liver.

**ANSWER:**ERAC Boston admits that Mr. Tribbett was expected to meet at least once a week for lunch or breakfast with an area employee and further responds that the performance improvement plan speaks for itself.  ERAC Boston denies that the events included alcohol and denies the remaining allegations in paragraph 144 of the Complaint.

**COMPLAINT ¶145:**Throughout his 20 years of employment, Darin never took even one sick day.  This includes throughout my illness.

**ANSWER:** ERAC Boston lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 145 of the Complaint and so denies it.  Responding further, ERAC Boston states that its personnel records do not include the reason for all days Mr. Tribbett took off during his employment.

**COMPLAINT ¶146:**Enterprise carried a health insurance and associated large medical costs as well as a $2,000,000 life insurance policy for Darin.

**ANSWER:**ERAC Boston admits that as Mr. Tribbett's employer, it provided health insurance and life insurance for Mr. Tribbett and other employees.

**COMPLAINT ¶147:**Darin's last review was conducted in October 2015 and the overall score was exceeds requirements.

**ANSWER:**ERAC Boston admits the allegations in paragraph 147 of the Complaint.

**COMPLAINT ¶148:**Darin was viewed as damaged goods.

**ANSWER:**ERAC Boston denies the allegations in paragraph 148 of the Complaint.

**Retaliation**

**COMPLAINT ¶149:**The non-compete was signed as a condition of continued employment in 2001.

**ANSWER:**ERAC Boston denies the allegations in paragraph 149 of the Complaint.  Responding further, Defendant states that Mr. Tribbett's execution of the non-compete contract was a condition of his promotion to Area Manager.

**COMPLAINT ¶150:**Enterprise stopped using the particular non-compete form signed by Darin.

**ANSWER:**ERAC Boston admits that it has updated its standard employment contracts from time to time and has required employees to sign the updated version, but denies the remaining allegations in paragraph 150 of the Complaint.

**COMPLAINT ¶151:**Former employees of Enterprise have signed the same non-compete that Darin signed and have gone to work for competitors. Upon information and belief, Enterprise chose not to enforce the terms of the non-compete with those individuals. Upon information and belief, Enterprise selectively chose to enforce the terms of the non-compete with Darin.

**ANSWER:**ERAC Boston admits that other former employees signed the same form of non-compete agreement that Mr. Tribbett signed.  ERAC Boston denies the remaining allegations in paragraph 151.

**COMPLAINT ¶152:**But for Darin's complaints of discrimination, Enterprise would never have sought to enforce the non-compete.

**ANSWER:**ERAC Boston denies the allegations in paragraph 152 of the Complaint.

**COMPLAINT ¶153:**Then [sic] non-compete is exceptionally onerous and if enforced, would prevent Darin from providing for his family.

**ANSWER:**ERAC Boston denies the allegations in paragraph 153 of the Complaint.

**COUNT I**
**(Tortious Interference against Enterprise)**

**COMPLAINT ¶154:**Darin repeats and incorporates by reference here the allegation in each and every paragraph of this Verified Complaint.

**ANSWER:**Paragraph 154 consists of statements of incorporation, to which no response is required.  To the extent that a response is deemed required, ERAC Boston incorporates its responses to Paragraphs 1 through 153 herein.

**COMPLAINT ¶155:**Enterprise was aware that Darin obtained employment with Key Automotive Group.

**ANSWER:**ERAC Boston admits that it received information suggesting that Plaintiff had discussed or obtained employment with Key Automotive Group and otherwise denies the allegations in paragraph 155.

**COMPLAINT ¶156:**Enterprise deliberately sought to prevent Darin from working with Key Automotive Group.

**ANSWER:**ERAC Boston states that it sought to ensure Plaintiff's compliance with his restrictive covenant according to its terms and otherwise denies the allegations in paragraph 156.

**COMPLAINT ¶157:**Enterprise tortuously interfered with Darin's ability to work for Key Automotive Group.

**ANSWER:**ERAC Boston denies the allegations in paragraph 157.

**COMPLAINT ¶158:**Enterprise acted out of spite and ill will, with malice, improper motive and improper means.

**ANSWER:**ERAC Boston denies the allegations in paragraph 158.

**COMPLAINT ¶159:**Enterprise's conduct was unrelated to any legitimate corporate purpose.

**ANSWER:**ERAC Boston denies the allegations in paragraph 159.

**COMPLAINT ¶160:**Enterprise's conduct caused Darin to suffer significantly economic and emotional harm.

**ANSWER:**ERAC Boston denies the allegations in paragraph 160.

## COUNT II
### (Declaratory Judgment)

**COMPLAINT ¶161:**Darin repeats and incorporates by reference here each and every paragraph of this Verified Complaint.

**ANSWER:**Paragraph 161 consists of statements of incorporation, to which no response is required.  To the extent that a response is deemed required, ERAC Boston incorporates its responses to each and every paragraph of this Answer.

**COMPLAINT ¶162:**An actual controversy exists between the parties, and a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to this action.

**ANSWER:**ERAC Boston denies the allegation in paragraph 162 of the Complaint.

**COMPLAINT ¶163:**The non-compete provision contained in the Contract is not supported by consideration.

**ANSWER:**ERAC Boston denies the allegation in paragraph 163 of the Complaint.

**COMPLAINT ¶164:**The non-compete provision does not protect a legitimate business interest of Enterprise, is overbroad in its restrictions and unlawfully precludes Darin from earning a livelihood.

**ANSWER:**ERAC Boston denies the allegation in paragraph 164 of the Complaint.

## COUNT III
### (Age Discrimination -  Massachusetts)

**COMPLAINT ¶165:**Darin repeats and incorporates by reference here the allegation in each and every paragraph of this Verified Complaint.

**ANSWER:**Paragraph 165 consists of statements of incorporation, to which no response is required.  To the extent that a response is deemed required, ERAC Boston incorporates its responses to the paragraphs of this Answer.

**COMPLAINT ¶166:**At all of the relevant times Darin was performing at an exceptionally high level.

**ANSWER:**ERAC Boston denies the allegations in paragraph 166 of the Complaint.

**COMPLAINT ¶167:**The decision to terminate Darin's employment was motivated by age.

**ANSWER:**ERAC Boston denies the allegations in paragraph 167 of the Complaint.

**COMPLAINT ¶168:**But for Darin's age, Enterprise would not have fired him.

**ANSWER:**ERAC Boston denies the allegations in paragraph 168 of the Complaint.

**COMPLAINT ¶169:**Enterprise has caused Darin to suffer significant economic and emotional harm.

**ANSWER:**ERAC Boston denies the allegations in paragraph 169 of the Complaint.

**COMPLAINT ¶170:**Enterprise's conduct violates Darin's rights under General Laws Chapter 151B.

**ANSWER:**ERAC Boston denies the allegations in paragraph 170 of the Complaint.

**COMPLAINT ¶171:**The reasons stated by Enterprise for its adverse action are false and an inference can be drawn that the real reason was unlawful.

**ANSWER:**ERAC Boston denies the allegations in paragraph 171 of the Complaint.

## COUNT IV
### (Age Discrimination - Federal)
**COMPLAINT ¶172:**Darin repeats and incorporates by reference here the allegation in each and every paragraph of this Verified Complaint.

**ANSWER:**Paragraph 172 consists of statements of incorporation, to which no response is required.  To the extent that a response is deemed required, ERAC Boston incorporates its responses to the paragraphs of this Answer.

**COMPLAINT ¶173:**At all of the relevant times Darin was performing at an exceptionally high level.

**ANSWER:**ERAC Boston denies the allegations in paragraph 173 of the Complaint.

**COMPLAINT ¶174:**The decision to terminate Darin's employment was motivated by age.

**ANSWER:**ERAC Boston denies the allegations in paragraph 174 of the Complaint.

**COMPLAINT ¶175:**But for Darin's age, Enterprise would not have fired him.

**ANSWER:**ERAC Boston denies the allegations in paragraph 175 of the Complaint.

**COMPLAINT ¶176:**Enterprise has caused Darin to suffer significant economic and emotional harm.

**ANSWER:**ERAC Boston denies the allegations in paragraph 176 of the Complaint.

**COMPLAINT ¶177:**Enterprise's conduct violates Darin's rights under the Age Discrimination in Employment Act.

**ANSWER:**ERAC Boston denies the allegations in paragraph 177 of the Complaint.

**COMPLAINT ¶178:**The reasons stated by Enterprise for its adverse action are false and an inference can be drawn that the real reason was unlawful.

**ANSWER:**ERAC Boston denies the allegations in paragraph 178 of the Complaint.

**COUNT V**
**(Disability - Massachusetts)**

**COMPLAINT ¶179:**Darin repeats and incorporates by reference here the allegation in each and every paragraph of this Verified Complaint.

**ANSWER:**Paragraph 179 consists of statements of incorporation, to which no response is required.  To the extent that a response is deemed required, ERAC Boston incorporates its responses to the paragraphs of this Answer.

**COMPLAINT ¶180:**Enterprise regarded Darin as suffering from a disability.

**ANSWER:**ERAC Boston denies the allegations in paragraph 180 of the Complaint.

**COMPLAINT ¶181:**Despite being ill Darin continued to work tirelessly for Enterprise and was able to perform the essential functions of the job.

**ANSWER:**ERAC Boston denies the allegations in paragraph 181 of the Complaint.  Responding further, while Mr. Tribbett may have been physically able to perform the essential functions of his job, he was not competent to perform those functions.

**COMPLAINT ¶182:**Despite Darin's working while ill, Enterprise placed unreasonable demands and expectations on him.

**ANSWER:**ERAC Boston denies the allegations in paragraph 182 of the Complaint.

**COMPLAINT ¶183:**Despite his exceptional work, Enterprise disciplined Darin.

**ANSWER:**ERAC Boston admits that it issued performance improvement plans to Mr. Tribbett and denies the remaining allegation in paragraph 183 of the Complaint.

**COMPLAINT ¶184:**Despite his satisfactory completion of work and requests made when disciplined, Enterprise terminated Darin's employment.

**ANSWER:**ERAC Boston admits that it terminated Mr. Tribbett's employment and denies the remaining allegations in paragraph 184 of the Complaint.

**COMPLAINT ¶185:**The reasons stated by Enterprise for its adverse action are false and an inference can be drawn that the real reason was unlawful.

**ANSWER:**ERAC Boston denies the allegations in paragraph 185 of the Complaint.

**COMPLAINT ¶186:**Enterprise's conduct has caused Darin to suffer significant emotional and economic harm.

**ANSWER:**ERAC Boston denies the allegations in paragraph 186 of the Complaint.

**COMPLAINT ¶187:**Enterprise's conduct violates Darin's rights under General Laws Chapter 151B.

**ANSWER:**ERAC Boston denies the allegations in paragraph 187 of the Complaint.

## COUNT VI
### (Disability - Federal)

**COMPLAINT ¶188:**Darin repeats and incorporates by reference here the allegation in each and every paragraph of this Verified Complaint.

**ANSWER:**Paragraph 188 consists of statements of incorporation, to which no response is required.  To the extent that a response is deemed required, ERAC Boston incorporates its responses to the paragraphs of this Answer.

**COMPLAINT ¶189:**Enterprise regarded Darin as suffering from a disability.

**ANSWER:**ERAC Boston denies the allegations in paragraph 189 of the Complaint.

**COMPLAINT ¶190:**Despite being ill Darin continued to work tirelessly for Enterprise and was able to perform the essential functions of the job.

**ANSWER:**ERAC Boston denies the allegations in paragraph 190 of the Complaint.

**COMPLAINT ¶191:**Despite Darin's working while ill, Enterprise placed unreasonable demands and expectations on him.

**ANSWER:**ERAC Boston denies the allegations in paragraph 191 of the Complaint.

**COMPLAINT ¶192:**Despite his exceptional work, Enterprise disciplined Darin.

**ANSWER:**ERAC Boston admits that it issued performance improvement plans to Mr. Tribbett and denies the remaining allegation in paragraph 192.

**COMPLAINT ¶193:**Despite his satisfactory completion of work and requests made when disciplined, Enterprise terminated Darin's employment.

**ANSWER:**ERAC Boston admits that it terminated Mr. Tribbett's employment and denies the remaining allegations in paragraph 193.

**COMPLAINT ¶194:**The reasons stated by Enterprise for its adverse action are false and an inference can be drawn that the real reason was unlawful.

**ANSWER:**ERAC Boston denies the allegations in paragraph 194 of the Complaint.

**COMPLAINT ¶195:**Enterprise's conduct has caused Darin to suffer significant emotional and economic harm.

**ANSWER:**ERAC Boston denies the allegations in paragraph 195 of the Complaint.

**COMPLAINT ¶196:**Enterprise violated Darin's rights under the Americans With Disabilities Act.

**ANSWER:**ERAC Boston denies the allegations in paragraph 196 of the Complaint.

**COUNT VII**
**(Retaliation – Massachusetts and Federal Law)**

**COMPLAINT ¶197:**Darin repeats and incorporates by reference here the allegation in each and every paragraph of this Verified Complaint.

**ANSWER:**Paragraph 197 consists of statements of incorporation, to which no response is required.  To the extent that a response is deemed required, ERAC Boston incorporates its responses to the paragraphs of this Answer.

**COMPLAINT ¶198:**Darin protested unlawful discrimination.

**ANSWER:**Paragraph 198 of the Complaint consists of a conclusion of law to which no response is required.  To the extent the Court requires a response, ERAC Boston admits that, through counsel and after the termination of his employment, Mr. Tribbett tendered a document to ERAC Boston in which he claimed he had been subject to unlawful employment practices.  ERAC Boston states that the referenced document speaks for itself.

**COMPLAINT ¶199:**Enterprise was aware that Darin opposed unlawful discrimination.

**ANSWER:**ERAC Boston was aware that Mr. Tribbett's attorney had made complaints on his behalf and otherwise denies the allegations in paragraph 199 of the Complaint.

**COMPLAINT ¶200:**Enterprise elected to attempt to enforce the terms of a non-compete agreement.

**ANSWER:**ERAC Boston states that it sought to ensure Plaintiff's compliance with his restrictive covenant according to its terms and otherwise denies the allegations in paragraph 200 of the Complaint.

**COMPLAINT ¶201:**As a result, Darin lost an employment opportunity and has been forced to remain out of work for an extended period of time.

**ANSWER:**ERAC Boston denies the allegations in paragraph 201 of the Complaint.

**COMPLAINT ¶202:** Upon information and belief, Enterprise selectively chose to enforce the terms of the non-compete.

**ANSWER:**ERAC Boston denies the allegations in paragraph 202 of the Complaint.

**COMPLAINT ¶203:**Enterprise's conduct has caused Darin to suffer severe economic and emotional harm.

**ANSWER:**ERAC Boston denies the allegations in paragraph 203 of the Complaint.

**COMPLAINT ¶204:**Enterprise violated Darin's rights under federal and state law.

**ANSWER:**ERAC Boston denies the allegations in paragraph 204 of the Complaint.

## PRAYER FOR RELIEF

Defendant denies the propriety of each and every request contained in Plaintiff's prayer

for relief and denies each and every factual allegation contained therein.

## JURY DEMAND

Defendant also demands a jury trial.

## **ADDITIONAL, AFFIRMATIVE AND OTHER DEFENSES**

By listing the following as defenses, Defendant does not concede that each of the matters covered by the numbered defenses is to be proven by Defendant, and Defendant reserves its position that Plaintiff retains the burden of proof on all matters necessary to state the claims asserted in his Complaint, and to establish his alleged damages.

## FIRST ADDITIONAL DEFENSE

Plaintiff fails to state a claim upon which relief may be granted.

## SECOND ADDITIONAL DEFENSE

Plaintiff cannot establish a *prima facie* case for any of his causes of action or otherwise cannot satisfy his burden of proof.

## THIRD ADDITIONAL DEFENSE

Defendant has complied with all laws and regulations and satisfied its statutory obligations toward Plaintiff.

## FOURTH ADDITIONAL DEFENSE

Plaintiff's request for declaratory judgment is barred because the Court lacks jurisdiction.

## FIFTH ADDITIONAL DEFENSE

The Complaint is barred, in whole or in part, by the equitable doctrines of waiver, estoppel, unclean hands and/or laches.

## SIXTH ADDITIONAL DEFENSE

Without conceding that Plaintiff has suffered any damages as a result of any purportedly wrongful act by Defendant, Plaintiff's damages are limited or cut off to the extent that he has failed to mitigate his damages.

## SEVENTH ADDITIONAL DEFENSE

Without conceding that Plaintiff has suffered any damages as a result of any purportedly wrongful act by Defendant,  Defendant did not cause any damages that Plaintiff may have suffered nor is Defendant responsible for any such damages.

## EIGHTH ADDITIONAL DEFENSE

Plaintiff's claims are barred to the extent that he failed to comply with applicable statutes of limitation or failed to satisfy or exhaust administrative or jurisdictional prerequisites.

## NINTH ADDITIONAL DEFENSE

Plaintiff is barred or estopped by his own negligence, conduct, acts, or omissions from asserting some or all of the claims set forth in the Complaint, or from obtaining relief.

## TENTH ADDITIONAL DEFENSE

If Plaintiff alleges a claim for punitive damages, such claim is barred because such damages are not available.

## ELEVENTH ADDITIONAL DEFENSE

Plaintiff is not entitled to the damages he seeks or to attorneys' fees.

## TWELFTH ADDITIONAL DEFENSE

Defendant had a legal right to enforce the non-compete provision with respect to Key Automotive Group and did not enforce the provision in bad faith.

## THIRTEENTH ADDITIONAL DEFENSE

Plaintiff filed his claim against an entity that no longer exists, and has failed to name a proper defendant.

## FOURTEENTH ADDITIONAL DEFENSE

Plaintiff is not entitled to pre-judgment relief of any kind because he cannot demonstrate that he is likely to succeed on the merits of his claims, because any damages posed by his claims are monetary in nature and pose no threat of irreparable harm, and because he cannot show that any ostensible harm to him is greater than the harm posed to ERAC Boston by the imposition of pre-judgment relief.

## FIFTEENTH ADDITIONAL DEFENSE

Plaintiff is not disabled within the meaning of the applicable statutes and/or is not a "qualified" person with a disability within the meaning of the applicable statutes.

## SIXTEENTH ADDITIONAL DEFENSE

Plaintiff has not asserted a failure to accommodate claim.  If asserted, such claim would fail because Plaintiff did not request an accommodation and cannot show that a reasonable accommodation was available.

## SEVENTEENTH ADDITIONAL DEFENSE

Plaintiff's claims are not actionable because the employment decisions challenged were justified by legitimate, non-discriminatory business reasons, and Defendant did not act with retaliatory or discriminatory intent.

EIGHTEENTH ADDITIONAL DEFENSE

Plaintiff cannot establish that Defendant's actions were a pretext for discrimination or retaliation.

NINETEENTH ADDITIONAL DEFENSE

Without conceding that Plaintiff has suffered any damages as a result of any purportedly wrongful act by Defendant, Plaintiff's damages are limited to the extent that Defendant had lawful reasons to terminate Plaintiff's employment, including but not limited to Plaintiff's stated knowledge about fraudulent conduct by coworkers that he failed to report.

## RESERVATION OF RIGHT TO AMEND

Defendant has not completed its investigation of the facts of this case, has not completed discovery in this matter, and has not completed its preparation for trial. The defenses stated herein are based on Defendant's knowledge, information, and belief at this time, and Defendant specifically reserves the right to modify, amend, or supplement any defenses contained herein.

WHEREFORE, the Defendant prays that the Court enter judgment:

1.      dismissing the Complaint on the merits and with prejudice;

2.      granting to Defendant its costs, including attorneys' fees, incurred in this action; and

3.      granting to Defendant further relief as the Court may deem just and proper.

Respectfully submitted,

ENTERPRISE RENT-A-CAR COMPANY OF
BOSTON, LLC


By: s/*Hillary J. Massey*            
Barry J. Miller (BBO No. 661596)
Hillary J. Massey (BBO No. 669600)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800
Facsimile:  (617) 946-4801
bmiller@seyfarth.com
hmassey@seyfarth.com

DATED:  June 30, 2017

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 30, 2017, a true copy of the foregoing document was filed electronically through the Court's ECF system, which will deliver electronic notification to all individuals listed as registered participants, and hardcopies will be delivered to any counsel of record or unrepresented party not listed as a registered participant.

*s/Hillary J. Massey*
Hillary J. Massey
Attorney for Defendant
